In re Kathleen A. SHEA, Debtor.

Warren H. HEILBRONNER, Plaintiff,

v.

The COMMUNITY SAVINGS BANK, Defendant.

Bankruptcy Nos. 80–21301, 81–2249A.

United States Bankruptcy Court, W. D. New York.

Dec. 11, 1981.

---

Warren H. Heilbronner, Rochester, N. Y., Trustee, for debtor.

David A. Sprentall, Rochester, N. Y., for defendant.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The trustee in this matter has commenced an action against the defendant bank to set aside a preference under 11 U.S.C. § 547. The defendant bank, hereinafter referred to as "Community", raised a question of the trustee's standing to bring the action because of the delay in commencing the action. The facts which were stipulated are set forth below.

Kathleen Shea, debtor herein, filed her Chapter 7 petition on September 16, 1980. The debtor's residence located at 135 Seneca Road, Rochester was listed on her schedule of assets. Although the schedules did not indicate it, the debtor owned the property as tenant in common with her ex-husband. In the debtor's schedules, the home was valued at $39,000 subject to a first mortgage in the amount of $29,000 and a second mortgage in the amount of $9,262.82. The second mortgage was allegedly held by Community, the defendant herein.

The trustee found no evidence of the alleged second mortgage after searching the records at the Monroe County Clerk's Office. The debtor's attorney was advised of this at the first meeting of creditors. He moved to amend the schedules to indicate Community's debt was unsecured. The motion was denied on December 1, 1980 when debtor's attorney failed to appear in support of the motion.

On December 17, 1980, Community filed an unsecured proof of claim for $9,734.51 and Mrs. Shea received her discharge on January 22, 1981.

During this period, the trustee had an appraisal done of the real property in question. When the appraisal revealed a value of $52,000, he notified the debtor of his intent to sell the property to recover the equity over the federal homestead exemption claimed by the debtor. A dispute arose between the debtor and the trustee as to the true value of the property. In settlement of this dispute, the debtor paid the trustee $500 for his interest in the property. The trustee conveyed his interest in the property to the debtor by bargain and sale deed on May 29, 1981.

When the trustee conveyed all his interest in the property to Kathleen Shea, he held title not only to Kathleen's interest but also to her ex-husband's interest because he was her husband's trustee in bankruptcy as well. In a stipulation contained in the divorce decree of Mr. and Mrs. Shea, Shea had agreed that when he filed bankruptcy he would claim the full federal exemption in the real property and get the trustee to abandon his interest to him. Mr. Shea would then quit claim his interest to Mrs. Shea. In his bankruptcy, filed April 2, 1980, Gary Shea valued his interest in the real property in question at $3,250 and claimed it exempt. He could have increased his exemption to $7500 but because of value he put on property there was no need. He did not use the balance of his $7500 exemption to exempt anything. Later, events showed his estimate of value to be reasonably accurate.

On September 10, 1981, Mrs. Shea sold the property to a third party for $47,500. At that time, she became aware of the fact that Community had obtained a judgment against her in the amount of $9,501.67 and a judicial lien had attached to her interest in the Seneca Road property on September 2, 1980, 14 days before she filed her petition in bankruptcy. As a result, the net proceeds of the sale amounting to $10,109.47 were placed in escrow until the validity of Community's lien could be determined.

On September 11, 1981, debtor, with new counsel, moved to waive debtor's January

22, 1981 discharge. This motion was granted and an adjourned discharge hearing was scheduled for September 28, 1981. On that date, her counsel moved to avoid Community's lien pursuant to § 522(f) claiming the lien impaired debtor's exempt property. However, her counsel presented the wrong facts to the Court and the motion was denied.

On October 6, 1981, the present action was commenced by the trustee to avoid Community's lien as a preferential transfer pursuant to § 547(b).

■ It must be stressed at the outset that the problems presented in this case would never have developed if debtor's attorneys had done what they should have done. A conscientious debtor's attorney should check the judgment roll at the County Clerk's office. If Mrs. Shea's attorney had done this when he was alerted by the trustee to the fact that there was no second mortgage on the property and if he ascertained the true facts, the matter would have been disposed of in the normal course of the administration of these estates.

Her attorneys failed to do what was expected of them and the lien was never avoided. Consequently, as time passed, the lien remained valid and firmly fixed on the debtor's interest in the property. When the value of Mrs. Shea's interest in the property increased upon her acquiring full ownership in the summer of 1981, the lien that once could have been made worthless, suddenly had value to the extent Mrs. Shea's interest in the property exceeded her allowable exemption.

This dark comedy of errors did not stop at her attorneys' non-feasance. It devolved into mis-feasance when her attorneys, after finally realizing something must be done about the Community lien, so ineptly argued the September 28, 1981 § 522(f) motion that it was denied.

Now, the trustee in an attempt to rescue the debtor from the incompetence of her own attorneys seeks to wipe out the entire Community lien as a voidable preference.

It is clear as crystal that the Community lien is a voidable preference under § 547 if the action was brought in a timely fashion.

Community's judgment attached to the property of the debtor within two weeks of the filing in bankruptcy. The debtor was insolvent at that time. There was no present consideration and it enables Community, if the judgment is continued, more than their fair share of the debtor's estate. Not so clear is whether the trustee can bring this action when the fruits of his labor cannot inure to the benefit of the estate.

■ Community argues that the trustee has no standing to bring this suit since the trustee has already disposed of the property and therefore has no interest in avoiding the lien. Ordinarily, a party must have a stake in the outcome of a controversy to have standing to bring suit. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343. But while it is true in this case that the trustee has no interest in the outcome of the controversy, his right to bring the action is statutory. Section 547(b) provides that a "trustee *may avoid any transfer* of property of the debtor" if the five elements of a preference are present.* The section does not limit the trustee's avoiding power to those cases where the estate will be benefited. Therefore, this trustee has standing to bring the action and under the facts in this case the lien of the judgment is set aside as preferential.

■ In addition, when Community filed as an unsecured creditor, they may have lulled Mrs. Shea and her attorneys into a belief that Community was waiving its security. In the Second Circuit, such a claim may be amended to secured where the equities of the case allow. (See *Rumsey Mfg. Corp. v. United States*, 206 F.2d 565; *Lewith v. Irving Trust Co.*, 67 F.2d 855).

Here no application has been made to treat Community's claim as other than unsecured and if such an application were

* Emphasis added.

made, under the circumstance of this case, the equities would not permit such an amendment.

As a result, Community's judgment lien against the property of Mrs. Shea is hereby avoided and it is so ordered.